NATHAN SCHLANGER, PHILIP SCHLANGER AND MOE SCHLANGER, PARTNERS TRADING AS CONCRETE BLOCK COMPANY OF IRVINGTON, PLAINTIFFS-APPEL-LANTS, v. FEDERAL INSURANCE COMPANY, A CORPO-RATION, DEFENDANT-RESPONDENT.

Argued November 17, 1964—Decided January 22, 1965.

18

Mr. *Sidney Krieger* argued the cause for appellants (*Mr. Sidney Krieger*, attorney, and of counsel).

Mr. *William H. Osborne, Jr.* argued the cause for respondent (*Messrs. Pitney, Hardin & Kipp*, attorneys; *Mr. Harold J. Wallum, Jr.*, on the brief).

The opinion of the court was delivered by

HANEMAN, J. Plaintiff filed suit as a third-party beneficiary under a surety bond, and appealed to the Appellate Division after defendant's motion for summary judgment was granted. Before argument there, this Court granted certification on plaintiff's motion. *R. R.* 1:10–1A(a).

On June 15, 1960 Muhlenberg Hospital (Muhlenberg) entered into a written contract with Walter Kidde Constructors, Inc. (Kidde), under which Kidde was to erect an addition and make alterations to its hospital in Plainfield. Said contract was not filed in any county clerk's office under *N. J. S.* 2A:44–75.

Article 9 of the general conditions attached to the contract provides:

"Materials, Appliances, Employees
Unless otherwise stipulated, the Contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work."

Article 30 of the general conditions provides:

"The Owner shall have the right, prior to the signing of the Contract, to require the Contractor to furnish bond covering the faithful performance of the Contract and the payment of all obligations arising thereunder, in such form as the Owner may prescribe and with such sureties as he may approve. If such bond is required by instructions given previous to the submission of bids, the premium shall be paid by the Contractor; if subsequent thereto, it shall be paid by the Owner."

Muhlenberg was furnished with a bond executed by Kidde as principal and defendant as surety on June 27, 1960. The condition of said bond reads:

"The condition of this obligation is such, that whereas the Principal entered into a certain contract, hereto attached, with the Owner, dated June 15th, 1960, for alterations and additions to Muhlenberg Hospital.
Now, therefore, if the principal shall promptly make payment to all persons supplying labor and material in the prosecution of the work provided for in said contract * * * then this obligation to be void otherwise to remain in full force and virtue."

Kidde thereafter subcontracted a portion of the work required to be performed to James Kane & Company, Inc. (Kane). Kane purchased materials from plaintiff which were delivered and used in connection with its subcontract. Plaintiff did not file a notice of intention to furnish said materials under *N. J. S.* 2A:44–71. Kane has filed a petition in bankruptcy and plaintiff has not received payment of $1779.54 allegedly due for said materials. Plaintiff gave Kidde and defendant a statement of the amount due it and demanded payment from

defendant. Defendant having refused such payment, plaintiff filed this suit.

Plaintiff argues that a materialman furnishing materials to a subcontractor is a third-party beneficiary under the bond given by defendant to Muhlenberg. Defendant, on the other hand, argues that the bond constitutes a contract to indemnify Muhlenberg and hence only those persons having a mechanic's lien or some other enforceable claim against Muhlenberg come within its coverage. In order to solve the question thus posed we must construe the language of the bond. This in turn requires that the language be read in the light of the phraseology of the integrated prime contract, to which particular reference is made in the bond and under the terms of which the bond was furnished. *Graybar Electric Co. v. Continental Cas. Co.*, 50 *N. J. Super.* 289, 294 (*App. Div.* 1958).

Although the words of the bond are not words of "promise" in form, the words of "condition" should be regarded as used in that vein. The ascertainment of the actual underlying purposes and motives of the promisor and promisee in requiring and furnishing the bond is so complex a question as to be almost unsolvable. A third party's right, in any event, is not dependent upon the promisee's motive, the pivotal question being whether the surety promised to pay money to persons situated as is plaintiff. It is sufficient if a specific third party falls within the class to which payment was promised:

"* * * the third party has an enforceable right if the surety promises in the bond, either in express words or by reasonable implication, to pay money to him. If there is such a promissory expression as this, there need be no discussion of 'intention to benefit.' We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. It is a much simpler question: Did the surety promise to pay money to the plaintiff?" 4 *Corbin on Contracts* § 798, *pp.* 163–4 (1951).

See also 4 *Corbin on Contracts* § 861, *p.* 179 (1951); *Daniel-Morris Co. v. Glens Falls Indemnity Co.*, 283 *App. Div.* 504,

128 *N. Y. S. 2d* 760, 763 (*App. Div.* 1954), affirmed 308 *N. Y.* 464, 126 *N. E. 2d* 750 (*Ct. App.* 1955).

As noted above, Kidde was obligated by Article 9 of the contract to pay for all of a list of specific items and "other facilities necessary for the execution and completion of the work." Article 30 thereof provided that if a payment bond were required it should contemplate "the payment of all obligations arising thereunder." The condition of the bond is that Kidde "make payment to all persons supplying labor and materials." The above language does not disclose an intention solely to indemnify Muhlenberg against mechanic's lien and other claims. Contrawise, the phrase "all persons supplying labor and material," when read in conjunction with the language of articles 9 and 30 of the prime contract, results in the conclusion that the liability assumed by defendant was far more comprehensive. The plain intent was to pay any person who performed labor or furnished materials, regardless of whether a lien was executed so that Muhlenberg became liable for the payment thereof. See *Graybar Electric Co. v. Continental Cas. Co., supra,* 50 *N. J. Super.,* at *p.* 296. A fair reading of the contract would lull a laborer or materialman into the conclusion that it was unnecessary to comply with the terms of the Mechanic's Lien Law in order to be assured of payment for his services. Accordingly, we find that plaintiff belonged to that class of persons for whose benefit the bond was given.

Defendant cites three New Jersey cases as authority for its contention, *i. e., Standard Gas Power Corp. v. New Eng. Cas. Co.,* 90 *N. J. L.* 570 (*E. & A.* 1917); *Skillman v. United States Fidelity, etc., Co.,* 101 *N. J. L.* 511 (*E. & A.* 1925); *Mitchell v. Hasbrouck Construction Co.,* 1 *N. J. Misc.* 498 (*Cir. Ct.* 1923).

In *Standard Gas* the court had before it for construction a bond given under a contract which provided that the contractor "* * * 'shall assume the defense of, and indemnify and save harmless, the commissioners * * * from all claims

relating to labor and materials furnished for the work,' * * *."
The court therein said (90 *N. J. L.*, at *pp.* 572–573):

> "No doubt where, as here, a bond refers to another contract and is conditioned for the performance of the specific agreements set forth therein, such contract, with all its stipulations, limitations, or restrictions, becomes a part of the bond and the two should be read together and construed as a whole.
>
> But so construed, it is clear that the bond is a contract of indemnity for the benefit of the Passaic Valley Sewerage Commissioners, and not for the benefit of those furnishing materials. The intent and purpose which the commissioners had in requiring it were twofold: The protection of the public interest in the proper performance of the work, and the protection of the commissioners from liability for claims on account of the work."

No such words limiting the obligation to indemnify only appear in the contract before us.

In *Skillman, supra,* by an eight to seven vote, the Court of Errors and Appeals held that the bond in that case was one of indemnity, and based its conclusion primarily upon the clause of the bond which was attached to the specifications and which read:

> "* * * 'make payment of all proper charges for labor and materials required in the aforementioned work, and indemnify and save harmless the party of the first part to the contract annexed, its officers, agents and servants, and each and every one of them against and from all suits and costs of every name and description, * * *.' "

The court cited *Standard Gas* as authority. The dissenting opinion is the more persuasive, reasoning that:

> "* * * the purpose of the prescribed form of bond, as clearly defined in the specifications attached to, was quite sufficiently indicated and made a part of the bond to make the laborers and materialmen in question parties for whose benefit and protection the bond was given within the meaning of our act, and that they are therefore entitled to recover thereunder against the surety. * * * The purpose of the bond in the instant case as defined in the attached contract * * * was both indemnity of the obligee and payment to the laborers and materialmen." 101 *N. J. L.*, at *p.* 517

In any event, no language appears in either the contract or the bond in the matter *sub judice* which could be considered to show an intent to create solely an indemnity contract.

Again, in *Mitchell, supra,* the word "indemnify" appeared in the bond, thereby leading the court, in reliance upon *Standard Gas,* to conclude the contract was one of indemnity only.

The above three cases are not apposite, there being no language of indemnity in this case.

The summary judgment entered in the Superior Court, Law Division, is therefore reversed.

*For reversal* — Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANE-MAN—7.

*For affirmance*—None.