OPINION OF THE COURT
Peter P. Cusick, J.
In this CPLR article 78 proceeding petitioners / plaintiffs seek to nullify certain permits granted, and to prevent consideration of permit applications filed or to be filed, in relation to the planned construction of a one-family residence by the respondents Boitel and Scalfani. Petitioners / plaintiffs also seek a declaration that a certain grant of land under water is owned collectively by the Harbor View Place homeowners and respondents Boitel and Scalfani, or in the alternative that the land under water is owned as inalienable land under water by the City of New York. Alternatively, petitioners / plaintiffs claim to be beneficiaries of a restrictive covenant upon respondents’ land and that the restrictive covenant bars erection of the planned one-family house.
Petitioners/plaintiffs have apparently abandoned their claim that the State owns the land under water based upon a failure of a condition subsequent contained in the 1860 land grant from the State of New York to a predecessor to respondents’ title.
*891 In any event the State has made no claim of title to the subject land under water and has never reclaimed the grant. Only the State can vacate the grant for breach of conditions subsequent and only in an action or proceeding for that purpose. Petitioners have no standing to challenge respondents’ rights under such grant. (See, Archibald v New York Cent. & Hudson Riv. R. R. Co., 157 NY 574; Matter of City of New York, 246 NY 1.)
Accordingly any claim by petitioners that the grant issued more than 130 years ago is void and title to the land under water is vested in the State of New York is without merit.
A previous motion to dismiss the petition and complaint as to the State respondents was granted by order of this court dated May 24, 1996.
Although the City respondents have not formally moved for dismissal they contend that based upon their answering papers they are entitled to have the petition and complaint dismissed as to them.
The City respondents contend that no Uniform Land Use Review Procedure (ULURP) was required prior to the City Planning Commission’s authorization for the modification of the topographic and botanic environment at the premises. Further the City respondents contend that the claims against the Department of Buildings (DOB) and the Department of Environmental Protection (DEP) are not ripe for review inasmuch as DOB has not issued a building permit and no application has yet been submitted to DEP.
Petitioners contend that section 197-c of the New York City Charter requires a ULURP review of proposals for all "waterfront land-fill” operations, and since the subject property is waterfront property, which arguably involves land-fill, a ULURP review is required.
Pursuant to section 105-42 of the Zoning Resolution of the City of New York the City Planning Commission may authorize the modification of existing natural topography in a Special Natural Area District such as the subject property. However, when an application for such authorization is received and it falls within one of the enumerated categories set forth in section 197-c of the City Charter, then ULURP review is required.
Section 197-c (a) (9) of the City Charter provides for ULURP review of an application that involves "waterfront land-fills.”
The City respondents do not dispute the fact that the subject property is "waterfront property”. They do, however, dispute *892 the claim that it involves "waterfront land-fills” which require ULURP review.
The mere fact that the subject property is "waterfront property” does not alone subject it to ULURP review. It is only if the application involves "waterfront land-fills” will ULURP review be required.
Section 1150 (7) (b) of the City Charter defines "water front property” but there is no definition in the City Charter of the term "waterfront land-fills”. In the absence of a definition, the City Planning Commission has interpreted "waterfront landfills” to mean the addition of fill materials to land that is below the mean high water line.
A statutory construction by the agency responsible for the administration of the statute should be upheld if the construction is not irrational or unreasonable. (Matter of Howard v Wyman, 28 NY2d 434; Matter of New York State Assn. of Life Underwriters v New York State Banking Dept., 83 NY2d 353.)
The interpretation by the City Planning Commission which is charged with the responsibility for "the conduct of planning relating to the orderly growth, improvement and future development of the city” (NY City Charter § 192 [d]), as well as overseeing the implementation of laws that require environmental reviews of actions taken by the City (NY City Charter §§ 191, 192) is clearly rational and reasonable and is upheld by this court.
The documentary evidence submitted clearly establishes that any land-fill needed to complete construction will be above the mean high water line. Therefore the proposed construction does not involve "waterfront land-fill” and the authorizations of the City Planning Commission were not subject to review pursuant to ULURP and the decision to issue the authorizations was a proper exercise of the Commission’s authority pursuant to the Zoning Resolution.
The remaining claims against the DOB and DEP are merely speculative and are clearly premature and improper.
Therefore the petition / complaint is dismissed as to the City respondents.
Respondents Boitel and Scalfani have also moved to dismiss the petition /complaint in its entirety. In opposition to respondents’ motion and in support of their petition, the petitioners contend that they have ownership rights in the lands under water by virtue of the 1914 subdivision of the property by Narrows Improvement Company, Inc., and the sale of the lots with respect to that subdivision.
*893 There is no mention in any of the deeds to petitioners’ predecessors to a conveyance of any rights in land under water. Petitioners contend, however, that an undivided share in the grant of land under water passed automatically as "an appurtenance” with each deed to the purchasers of the subdivided lots.
The case of Archibald v New York Cent. & Hudson Riv. R. R. Co. (supra) relied upon by petitioners is clearly distinguishable and inapplicable to this case. Here, when Narrows Improvement Company, Inc., deeded the subdivided lots to petitioners’ predecessors it retained title to the waterfront portion of the property which included the land under water. The deeds to petitioners’ predecessors severed the connection of their land from the waterfront and from the land under water. (See, Hartwood Syndicate v Passaic Val. Council, 80 AD2d 871 [2d Dept 1981].) They therefore have no ownership rights in the land under water.
Petitioners also claim that the tax foreclosure proceeding by the City of New York was fatally defective for lack of notice to them and the City of New York never acquired title to the land under water, or in the alternative, if the City of New York did acquire title its sale to respondents’ predecessors was a nullity because the City lacked approval of the State Legislature.
Since the petitioners or their predecessors did not have any ownership rights in the subject property they were not required to be given notice of the in rem foreclosure. Therefore there is no merit to their challenge to the tax foreclosure proceeding for lack of notice to them.
Petitioners claim that, if the tax foreclosure was valid, the conveyance by the City of New York to respondents’ predecessors was a nullity, at least insofar as the land under water is concerned, since the City had no power to convey such land without first receiving authorization from the New York State Legislature. (General City Law § 20 [2]; NY City Charter § 383.)
The property herein was acquired by the City in an in rem tax proceeding due to the failure of the owners to pay taxes. It was not acquired for City use nor was it ever used by the City for anything and was not assigned for public use.
In 1860 the State of New York granted the lands under water for private use. The fact that these lands were forced upon the City and acquired involuntarily as the result of the failure of the owners to pay taxes, should not and does not now make *894 them city real estate, inalienable as waterfront property without authorization from the Legislature.
The court has found no case providing illumination as to how this type of property is to be treated. However, section 1166 of the Real Property Tax Law gives cities the right to sell and convey real property acquired by virtue of a tax foreclosure proceeding. In addition the courts have distinguished property acquired at a tax sale from other city property. (McSweeney v Bazinet, 269 App Div 213, lv denied 269 App Div 912, affd 295 NY 797; Maxwell v Kristensen, 15 Misc 2d 875, affd 9 AD2d 919, lv denied 10 AD2d 711; see also, 1978 Atty Gen [Inf Opns] 317.)
The fact that the City may have sought legislative approval for the sale of other waterfront property acquired in tax foreclosure proceedings does not mean it was required to do so in connection with the subject property.
Petitioners have not established that the City tax sale to respondents’ predecessors was in any way invalid.
Petitioners also claim that an express restriction upon construction is contained in the deeds given to their predecessors in title by the Narrows Improvement Company, Inc. In addition they contend that the subdivision plan implicitly placed an enforceable restriction upon the use of respondents’ property.
The deeds involved herein contained certain restrictions as to the type, cost, and location of any dwelling to be erected on the premises by the grantees. Following this there was a covenant by the grantor, Narrows Improvement Company, Inc., the then owner of respondents’ property on behalf of itself, its successor and assigns, not to erect any buildings or edifices higher than the grade of Harbor View Place East.
Immediately following this the deeds contained the following provision. "It is further understood and agreed that all the restrictions hereinabove contained shall run with the land and continue in force until the first day of January 1935 when they shall cease and terminate.”
Petitioners’ contention that this time limitation on the restrictions only applied to the grantees is without merit. The time limitation contained in the deeds does not specify that it applies only to the restrictions placed on the grantees. On the contrary it states, "all the restrictions hereinabove contained”.
Although a restrictive covenant is generally to be construed against the grantor, because the law has long favored free and *895 unencumbered use of real property, covenants restricting use are strictly construed against those seeking to enforce them. (Witter v Taggart, 78 NY2d 234; Huggins v Castle Estates, 36 NY2d 427.)
The placement of the time limitation provision after the restrictions placed on the grantees and grantor indicates that it applies to the restrictions placed upon both the grantees and the grantor. Petitioners have not presented anything to support a construction that the time limitation only applied to the grantees’ restrictions. Therefore, the restrictions relating to any building on respondents’ property terminated over 60 years ago.
Even assuming the time limitation did not apply to the grantor, the respondents are only bound by restrictions if they appear in some deed of record in the conveyance to them or to their predecessor in title. A restrictive covenant created by a common grantor and recited in the dominant tenant’s claim of title, which does not appear in the direct chain of title to the servient tenant’s land, does not burden the servient tenant’s property (Witter v Taggert, supra).
In addition, petitioners have not established that such exceptional circumstances existed that respondents should have searched all the deeds from the common grantor and that respondents should have known of the restrictions because of the subdivision plan. (See, Buffalo Academy of Sacred Heart v Boehm Bros., 267 NY 242.)
Respondents, therefore, did not have notice and are not bound by any restrictions in the deeds to petitioners’ predecessors.
The court has considered all of petitioners /plaintiffs’ remaining claims and finds them to be without merit.
Accordingly, the motion of the New York City respondents and the motion of the respondents Joseph Boitel and Elizabeth Scalfani are hereby in all respects granted, and the entire article 78 petition/complaint is hereby dismissed.